T.C. Summary Opinion 2001-67


UNITED STATES TAX COURT



EDWARD D. AND DONNA L. JOHNS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 13763-99S.                      Filed May 9, 2001.

Edward D. Johns, pro se.

Brandi B. Darwin (specially recognized) and <u>Stephen R.</u>
<u>Takeuchi</u>, for respondent.



PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.

Respondent determined a deficiency of $4,538 and an addition to tax under section 6651(a)(1) of $680 for 1996. Petitioners concede that they should have included an additional $4 of interest income in their gross income and that they are liable for the failure to file addition to tax under section 6651(a)(1). This Court must decide whether $13,938 of discharge of indebtedness income is includable in petitioners' 1996 gross income.

Some of the facts in this case have been stipulated and are so found. Petitioners resided in Ft. Myers, Florida, at the time they filed their petition.

In 1996, the job of petitioner Edward Johns (petitioner) was terminated. Petitioner knew he and his wife were overextended on credit card debt and that they would be faced with financial problems. Petitioners were headed for bankruptcy. Some of the creditors offered petitioners a settlement for less than the full amount of debt due. Petitioners paid a portion of the debts to these creditors and in return the remainder of the debts were discharged. Petitioners withdrew $17,511 from their retirement account, and paid the early withdrawal penalty on this amount, in order to use part of the amount to satisfy their debts.

In 1996, on the dates set forth below, petitioners made the following payments and the following portions of their credit card loans were forgiven by the lenders.

|  | Date | Payments | Discharge | Total |
|---|---|---|---|---|
| MBNA | Aug. 27 | $1,300 | $3,254 | $4,554 |
| MBNA | Aug. 27 | 2,000 | 4,507 | 6,507 |
| Barnett Bank N.A. | Sept. 30 | 2,500 | 1,535 | 4,035 |
| Nationsbank of Delaware N.A. | Oct. 29 | 3,605 | 4,642 | 8,247 |
| Total of debts discharged |  |  | $13,938 |  |

None of the aforementioned amounts included interest which would have been deductible if paid.  All of the debts that were discharged were valid debts.  Petitioners did not file for bankruptcy in 1996.  Petitioners did not include the $13,938 of discharged debt in their gross income on their 1996 Federal income tax return.  Respondent determined that the income from the discharge of petitioners' debts must be included in their gross income because petitioners' creditors forgave the debts.

Based on the testimony and the exhibits presented at trial, we find that petitioners had the following liabilities prior to the discharge of the loans on August 27, 1996:

| | |
|---|---|
| Fleet Mortgage | $54,311 |
| Nationsbank | 8,247 |
| MBNA America | 4,554 |
| MBNA America | 6,507 |
| Barnett Bank | 4,035 |
| Chemical Bank | 9,238 |

| | |
|---|---|
| Bank of New York | 7,574 |
| G.E. Capital Credit | 4,559 |
| Florida Power and Light Credit Union | 6,746 |
| First North American National Bank | 2,500 |
| First Union Bank | 15,253 |
| | $123,524 |

On August 27, 1996, petitioners had the following assets:

| | |
|---|---|
| House, assessed value | $55,490 |
| FPL thrift plan | 35,371 |
| Thrift plan withdrawal | 17,511 |
| MetLife annuity | 20,840 |
| Van | 5,000 |
| Furniture, etc. | 6,000 |
| Automobile | 3,000 |
| Sedan | 2,500 |
| Cash and bank accounts | 2,000 |
| Trailer | 100 |
| | $147,812 |

In addition, petitioners had potential interests in the FPL pension plan and the Florida Retirement System, which we find unnecessary to address in this case, as explained below.

On August 27, 1996, when the MBNA loans were discharged, petitioners had assets of $147,812 and liabilities of $123,524.

On September 30, 1996, when the Barnett Bank N.A. loan was discharged, petitioners had assets of $144,512 ($147,812 less the payments to MBNA of $1,300 and $2,000) and liabilities of $112,463 ($123,524 less the MBNA debts of $4,554 and $6,507).

On October 29, 1996, when the Nations Bank loan was discharged, petitioners had assets of $142,012 ($144,512 less the payment to Barnett Bank of $2,500) and liabilities of $108,428 ($112,463 less the Barnett Bank debt of $4,035).

Petitioner stated: "If I have to pay income tax on the portion the [companies] cancelled I will have learned one thing. It does not pay to try and do the right [and] moral thing, just file bankruptcy [and] clear your debts." Petitioners contend that they should not have to include the $13,938 of discharged debt in their income because they were insolvent in 1996. Respondent contends that petitioners were not insolvent in 1996 because all of petitioners' property should be included in the calculation of the fair market value of their "assets" under section 108(d)(3), regardless of whether some property is exempt from creditors' claims under State law.

Under section 61(a)(12), gross income includes "all income from whatever source derived, including * * * income from discharge of indebtedness". Under certain circumstances, a taxpayer may exclude from gross income the income from discharge of indebtedness if the discharge occurs when the taxpayer is insolvent. Sec. 108(a)(1)(B). The exclusion cannot exceed the amount by which the taxpayer is insolvent. Sec. 108(a)(3). For purposes of this section, "insolvent" is defined as "the excess of liabilities over the fair market value of assets." Sec. 108(d)(3). Such a determination is to be made on the basis of the taxpayer's assets and liabilities immediately before the discharge. Sec. 108(d)(3).

Under the Florida Constitution, Florida residents are provided with a homestead exemption. Fla. Const. art. 10, sec. 4 (West 1965). Under this exemption, in general, the debtor's residence and the debtor's personal property to the value of $1,000 are exempt from creditors. Id. The Florida Statutes also provide exemptions for annuities and certain pension, retirement, and profit-sharing plans. Fla. Stat. Ann. secs. 222.14, 222.21 (West 1998). A debtor's interest, not to exceed $1,000 in value, in a single motor vehicle is also exempt from creditors. Fla. Stat. Ann. sec. 222.25 (West 1998). Therefore, under Florida law, petitioners' creditors would not be able to attach petitioners' home, $1,000 of the automobile, $1,000 of personal property, the interests in the FPL Thrift Plan and the MetLife annuity, and the potential interests in the FPL pension and the Florida Retirement System.

Even so, for purposes of section 108(a)(1)(B) and (d)(3), petitioners cannot exclude from their assets the property exempt under Florida law. This Court recently held that property exempt from creditors under State law may not be excluded from "assets" when making an insolvency determination under section 108(a)(1)(B) and (d)(3). Carlson v. Commissioner, 116 T.C. 87 (2001).

As set forth above, on each of the three dates on which petitioners' debts were discharged, petitioners' assets exceeded

their liabilities. We understand that petitioners considered themselves insolvent in 1996, but at all relevant times petitioners were solvent at the time their debts were discharged within the meaning of section 108(a).

Because petitioners were solvent, we need not address whether the potential benefits under the FPL pension plan and the Florida Retirement System, which petitioners had no access to in 1996, should be included in "assets". Nor do we need to decide whether the fair market value of the home was greater than the assessed value of the home.

On this record, we hold that petitioners must include the $13,938 of discharged debt in their 1996 gross income, pursuant to section 108(a)(1)(B).

To the extent we have not addressed any of the parties' arguments, we have considered them and find them to be without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.